2002 UT App 406

**MACRIS & ASSOCIATES, INC.,**
**Plaintiff and Appellant,**

v.

**NEWAYS, INC.; Thomas E. Mower; and Leslie D. Mower, Defendants and Appellees.**

No. 20010755–CA.

Court of Appeals of Utah.

Nov. 29, 2002.

M. David Eckersley, Prince Yeates & Geldzahler, Salt Lake City, for Appellant.

Wade S. Winegar, Christopher S. Crump, Scott T. Temby, and Bruce R. Murdock, Salem, for Appellees.

Before Judges DAVIS, GREENWOOD, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff Macris & Associates, Inc. (Macris) appeals from the trial court's decision to grant summary judgment for Defendants Neways, Inc. (Neways), Thomas E. Mower, and Leslie D. Mower.[1] The trial court granted Neways and Mowers's motion for summary judgment, ruling Neways and Mowers were not liable to Macris for consequential or punitive damages. We reverse and remand.

## BACKGROUND [2]

¶ 2 On April 17, 1991, Macris filed suit against Images and Attitude, Inc. (Images), owned by Mowers, claiming breach of contract.[3]

¶ 3 On September 1, 1992, Images sold its assets to Neways. Consequently, on February 14, 1995, Macris filed suit against Neways and Mowers, claiming fraudulent conveyance, successor liability, and alter ego, asserting that the transfer of assets from Images to Neways left Images without sufficient assets to cover any judgment rendered against it in *Macris I*.[4]

¶ 4 *Macris I* went to trial on February 16, 1995. On September 15, 1995, the trial court

---

1. We refer to Thomas E. Mower and Leslie D. Mower collectively as Mowers.

2. It is well established that "in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."

*Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). We recite the facts of this case accordingly.

3. We refer to this action as *Macris I*.

4. We refer to this action as *Macris II*.

ruled in favor of Macris and rendered a judgment against Images for $360,681.20.

¶ 5 On October 19, 1995, Neways and Mowers motioned for summary judgment in *Macris II*, contending that Macris's claims were barred by res judicata. The trial court granted Neways and Mowers's motion, holding res judicata barred Macris from recovering further contract damages.

¶ 6 Macris appealed and we reversed. *See Macris & Assocs., Inc. v. Neways, Inc.*, 1999 UT App 230, ¶ 17, 986 P.2d 748. The Utah Supreme Court granted certiorari to Neways and Mowers and affirmed, holding that Macris's claims of alter ego, fraudulent conveyance, and successor liability were not barred by res judicata. *See Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 47, 16 P.3d 1214. However, the supreme court further held that issue preclusion barred Macris from seeking additional contract damages from Neways and Mowers in *Macris II*.[5] *See id.*

¶ 7 On February 1, 2001, Macris filed a demand for payment of the *Macris I* judgment. On February 16, 2001, Neways International, Inc. (Neways International)[6] paid Macris $746,356.97, which covered the entire *Macris I* judgment and interest.

¶ 8 Following payment, Neways and Mowers again moved for summary judgment in *Macris II*, alleging that *Macris II* was moot because the *Macris I* judgment was paid and Macris was barred from seeking further contract damages in *Macris II*. In response, Macris asserted that the attorney fees incurred in *Macris II* were recoverable under the third-party litigation exception to the general rule that fees are not recoverable in a contract or tort action unless provided for in the contract or by statute because the fees were a consequence of the transfer of assets

precipitated by the breach and subsequent litigation in *Macris I*.[7]

¶ 9 In an order dated August 2, 2001, the trial court granted Mowers and Neways's motion for summary judgment, holding Macris could not recover consequential or punitive damages. First, the trial court ruled that Macris could not recover consequential damages because "attorney[ ] fees are not recoverable in a contract action unless provided by statute or by contract," *see, e.g., Collier v. Heinz*, 827 P.2d 982, 983 (Utah Ct.App.1992), and "[n]either of these exist." The trial court also determined that the third-party litigation exception proposed by Macris did not alter this outcome because, although the "third party litigation exception may apply in contract actions," Macris's case "ar[ose] under statute—the fraudulent transfer act[ ]," and the plain language of the fraudulent transfer act "did not provide an attorney's fee remedy." Second, the trial court ruled that Macris could not recover punitive damages because punitive damages "may be awarded only if compensatory or general damages are awarded," Utah Code Ann. § 78–18–1(1)(a) (Supp.2002), and Macris received "no award of general or compensatory damages" in *Macris II*. Furthermore, the trial court declined to "allow punitive damages as an element of recovery in a fraudulent transfer action," because it "decline[d] to find a remedy in a statute which the legislature did not see fit to include."

¶ 10 Macris appeals the trial court's decision to grant summary judgment in favor of Mowers and Neways.

## ISSUE AND STANDARD OF REVIEW

¶ 11 The issue on appeal is whether the trial court correctly granted Mowers and Neways's motion for summary judgment, ruling

5. The parties on appeal do not argue that consequential and punitive damages are additional contract damages.

6. Neways International is a corporation owned by Mowers separate from both Images and Neways and is not a party to either *Macris I* or *Macris II*.

7. Although Macris's complaint in *Macris II* asserts a direct claim against Mowers and Neways under the Uniform Fraudulent Transfer Act, it

makes no specific claim for attorney fees under the statute or pursuant to the third-party litigation exception. Instead, in response to Mowers and Neways's motion for summary judgment, Macris argued it was entitled to fees under the exception because only a consequential damage award would support a claim for punitive damages, and the fact that the third-party litigation was a claim under the fraudulent transfer act was not a bar to recovery of fees. This is Macris's argument on appeal, and we conduct our analysis accordingly.

that Mowers and Neways were not liable to Macris for consequential or punitive damages. "Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law." *Jones v. ERA Brokers Consol.*, 2000 UT 61, ¶ 8, 6 P.3d 1129; *see also* Utah R. Civ. P. 56(c). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented." *K & T, Inc. v. Koroulis,* 888 P.2d 623, 627 (Utah 1994). "We determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact." *Berenda v. Langford,* 914 P.2d 45, 50 (Utah 1996) (citations and quotations omitted).

## ANALYSIS

### I. Attorney Fees

█ ¶ 12 Macris claims the trial court erred in granting Mowers and Neways's motion for summary judgment on the basis that Macris was not entitled to attorney fees.

█ ¶ 13 "The long-standing rule in Utah is that attorney fees cannot be recovered unless provided for by statute or contract." *Collier v. Heinz,* 827 P.2d 982, 983 (Utah Ct.App.1992). "However, this general rule is not without exception." [8] *South Sanpitch Co. v. Pack,* 765 P.2d 1279, 1282 (Utah Ct.App. 1988). "A well-established exception to this general rule allows recovery of attorney fees as consequential damages, but only in the limited situation where the defendant's [wrongful conduct] foreseeably cause[s] the plaintiff to incur attorney fees through litiga-

tion with a third party." *Collier,* 827 P.2d at 983.

¶ 14 Thus far, Utah courts have applied the third-party litigation exception only to breach of contract and tort cases. *See, e.g., id.* at 983–84 (holding the third-party litigation exception applies "where the defendant's breach of contract foreseeably caused the plaintiff to incur attorney fees through litigation with a third party"); *South Sanpitch Co.,* 765 P.2d at 1282–83 (holding that "when the natural consequence of one's negligence is another's involvement in a dispute with a third party, attorney fees reasonably incurred in resolving the dispute are recoverable from the negligent party as an element of damages").

¶ 15 In this case, the trial court acknowledged the existence of the third-party litigation exception but refused to apply it because this case was brought under the Uniform Fraudulent Transfer Act (UFTA). *See* Utah Code Ann. §§ 25-6-1 to -13 (1998 & Supp. 2002).[9] The trial court reasoned that UFTA is statutory law, not tort or contract law, so the exception does not apply. We disagree.

█ ¶ 16 The cause of action for fraudulent transfer was not created by UFTA. Rather, " '[t]he law has long held that transfers of property designed to place a debtor's assets beyond the reach of the debtor's creditors are void as to the creditors.' " *National Loan Investors, L.P. v. Givens,* 952 P.2d 1067, 1069 (Utah 1998) (citation omitted); *see also Butler v. Wilkinson,* 740 P.2d 1244, 1260 (Utah 1987) (citing early common law cases). UFTA is simply "a codification of the common law that provided a remedy against debtors who sought to conceal their assets

8. There are numerous exceptions to the general attorney fees rule because "a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 782 (Utah 1994). Exceptions include: "when a party acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons,' " *id.* (citation omitted); "when nonparty class members [in a class action case] are financially benefitted as a result of the efforts of a few litigants who successfully create a fund that benefits the entire class," *id.;* "when a beneficiary sues a trustee for violation of the trust and obtains a recovery for all other beneficiaries whose

rights were also violated by the trustee," *id.* at 783; when a party acts as a " 'private attorney general' " and vindicates " 'a strong or societally important public policy,' " *id.* (citation omitted); "when a plaintiff's litigation confers 'a substantial benefit on the members of an ascertainable class,' " *id.* at 782 n. 18 (citation omitted); and when an insurer breaches an insurance contract, *see Collier v. Heinz,* 827 P.2d 982, 984 (Utah Ct.App.1992).

9. For convenience, we cite to the most recent version of the Utah Code. There has been no significant change to UFTA that would affect our analysis.

from creditors." *Givens,* 952 P.2d at 1069. Accordingly, "[u]nless displaced by [UFTA], the principles of law and equity, including merchant law and the law relating to principal and agent, equitable subordination, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement [UFTA]'s provisions." Utah Code Ann. § 25–6–11. Furthermore, "[b]ecause [UFTA] is remedial in nature, it should be liberally construed." *Givens,* 952 P.2d at 1069.

■ ¶ 17 We see no reason why a plaintiff in a fraudulent transfer case who would have had a claim for attorney fees under the third-party litigation exception before UFTA was enacted should now be denied attorney fees. UFTA does not expressly address attorney fees. Instead, it expressly grants courts the authority to employ a full array of remedial measures insofar as they are warranted under the particular facts of the case. *See* Utah Code Ann. § 25–6–8(1)(c)(iii) ("In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain . . . subject to applicable principles of equity and in accordance with applicable rules of civil procedure . . . any other relief the circumstances may require."); *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.,* 58 S.W.3d 897, 900 (Mo.Ct.App.2001). Therefore, since UFTA is silent as to the common law third-party litigation exception, we hold the third-party litigation exception is retained from the common law [10] and may be applied to causes of action that arise under UFTA.[11]

¶ 18 However, in this case, even though Macris is entitled to seek attorney fees incurred in pursuing a UFTA claim using the third-party litigation exception, it is limited by the requirements of the exception.

10. We do not decide whether attorney fees are recoverable under UFTA in a direct claim against the transferor or transferee.

11. Mowers and Neways rely on *Selvage v. J.J. Johnson & Assocs.,* 910 P.2d 1252 (Utah Ct.App. 1996), to support their argument that this court has previously determined UFTA does not allow attorney fees. However, in *Selvage,* this court was interpreting Utah Code Ann. § 25–6–9(2) (1995), a section of UFTA that discusses the

■ ¶ 19 To recover under the third-party litigation exception, the plaintiff must seek attorney fees from the defendant whose action caused the third-party litigation. *See South Sanpitch Co.,* 765 P.2d at 1283 (holding the third-party litigation exception applies where the plaintiff "seeks only those fees incurred in litigation against others to undo the problem [the defendant] negligently caused"). In this case, Images is the defendant whose action caused Macris to bring *Macris II.* Thus, to obtain attorney fees under the third-party litigation exception, Macris may seek attorney fees from Images. However, Images is not a party to the present proceeding.

■ ¶ 20 Instead, Macris alleges successor liability and alter ego in its complaint. Under successor liability, " 'where one company sells or otherwise transfers all its assets to another company,' " the purchaser is liable for the seller's debts and liabilities if:

> (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into [by the seller and the purchaser] fraudulently in order to escape liability for such debts.

*Macris & Assocs., Inc. v. Neways, Inc.,* 1999 UT App 230, ¶ 15, 986 P.2d 748 (citation omitted), *aff'd,* 2000 UT 93, 16 P.3d 1214. Accordingly, if Macris is successful in its claim that Neways is liable to Macris "for all amounts due or to become due from Images to Macris" because "Neways is the successor corporation to Images," then Macris may seek attorney fees from Neways under the third-party litigation exception.

remedies available to a creditor following a debtor's good faith transfer of assets. *Selvage,* 910 P.2d at 1263–64. Under this section, a creditor is entitled to recover "the amount necessary to satisfy the creditor's claim." Utah Code Ann. § 25–6–9(2). The *Selvage* court determined a creditor's claim does not include attorney fees. *Id.* at 1264. Here, Macris does not allege that Mowers and Neways were involved in a good faith transfer, but a fraudulent transfer governed by Utah Code Ann. § 25–6–8.

¶ 21 Similarly, under the alter ego doctrine, the trial court may "disregard the corporate entity" and hold an individual liable if: (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals;" and (2) "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979). Thus, based upon the way Macris's complaint is framed, if Macris can establish that Images is the alter ego of Neways, then the trial court may hold Neways liable for Images's actions.[12] If Macris can then establish that Neways is the alter ego of Mowers, then Macris may seek attorney fees from Mowers. Whether successor liability and alter ego exist involve questions of fact inappropriate for summary judgment.[13]

¶ 22 Furthermore, in order to recover attorney fees under the third-party litigation exception, Macris must also show that *Macris II* was a natural consequence of Images's breach and that it was necessary to bring the action. *See South Sanpitch Co.*, 765 P.2d at 1282. This is also a question of fact inappropriate for summary judgment.

¶ 23 Even if Macris is awarded attorney fees under the third-party litigation exception, such fees are limited to those incurred before the contract claim against Images was satisfied. "Under the third-party [litigation] exception, only the fees incurred in litigation with the third party are recoverable as consequential damages." *Collier*, 827 P.2d at 983–84. Macris cannot recover attorney fees incurred after *Macris I* was satisfied because these fees were incurred not in litigation with a third party to recover its contract damages, but in pursuit of Macris's claim for attorney fees as consequential damages, which would amount to a

fee upon a fee. Therefore, if Macris is entitled to attorney fees under the third-party litigation exception, it is only entitled to fees incurred in the third party litigation before Neways International paid the *Macris I* judgment.

## II. Punitive Damages

¶ 24 Macris claims the trial court erred by granting summary judgment for Mowers and Neways because Macris was not entitled to punitive damages.

¶ 25 "Punitive damages are the exception rather than the rule and should be imposed cautiously." *Von Hake v. Thomas*, 705 P.2d 766, 771 (Utah 1985); *see also First Sec. Bank of Utah, N.A. v. J.B.J. Feedyards, Inc.*, 653 P.2d 591, 598 (Utah 1982) ("Punitive damages constitute 'an extraordinary remedy . . . outside the field of usual redressful remedies' which 'should be applied with caution lest, engendered by passion or prejudice because of defendant's wrongdoing, the award becomes unrealistic or unreasonable.'" (Citation and footnote omitted.)).

¶ 26 Accordingly, "[e]xcept as otherwise provided by statute," a trial court may award punitive damages only if: (1) "compensatory or general damages are awarded," and (2) "it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." Utah Code Ann. § 78–18–1(1)(a) (Supp.2002).

¶ 27 Therefore, in this case, Macris is entitled to seek punitive damages only if it is awarded attorney fees as consequential damages in accordance with our decision and is otherwise entitled to punitive damages. These are questions of fact inappropriate for summary judgment.

---

12. In its complaint, Macris does not claim that Images is the alter ego of Mowers. Instead, it asserts that "Neways is the alter ego of Images and vice versa," and Mowers are "the alter ego of Neways, and vice versa." The third-party litigation exception does not support a direct claim for attorney fees against Mowers and Neways.

13. We note that Macris may not use its successor liability and alter ego claims to seek additional contract damages resulting from Images's breach of contract. *See Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 47, 16 P.3d 1214.

## CONCLUSION

¶ 28 We conclude that the trial court erred in granting summary judgment for Mowers and Neways. Summary judgment is inappropriate because issues of fact exist as to whether Macris is entitled to attorney fees under the third-party litigation exception and whether Macris is entitled to punitive damages.

¶ 29 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE Jr., Judges.